# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| LOURDES M. TEODOSIO, AMBER BROCK, GAROON J. GIBBS-RACHO, and DAMON A. PARKS, SR., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DAVITA, INC., THE BOARD OF DIRECTORS OF DAVITA, INC., THE PLAN ADMINISTRATIVE COMMITTEE OF DAVITA, INC., and JOHN DOES 1-30. <br> Defendants. | Case No. 22-cv-0712-WJM-MDB |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ...................................................................................................2

III.    SETTLEMENT NEGOTIATIONS ......................................................................2

IV.   THE PROPOSED SETTLEMENT ......................................................................3

V.    THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED ............................4

VI.   THE PROPOSED SETTLEMENT SHOULD BE APPROVED ........................................5

      A.     Legal Standard ........................................................................................5

      B.     The Settlement Satisfies the Tenth Circuit's *Rutter* Factors Underscoring
            Its Fairness, Reasonableness, and Adequacy ........................................6

            1.     The Proposed Settlement was Fairly and Honestly Negotiated.................6

            2.     Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome
                  of the Litigation in Doubt ...........................................................7

            3.     The Value of an Immediate Recovery Outweighs the Mere Possibility
                  of Future Relief After Protracted and Expensive Litigation.......................7

            4.     The Parties Deem the Settlement is Fair and Reasonable...........................9

VII.   THE LONE OBJECTOR'S ARGUMENTS LACK MERIT ............................................10

VIII.  THE REQUIRMENTS OF FED. R. CIV. P. 23(e)(2) IS SATISFIED ............................13

      A.     Equitable Treatment of Class Members and Equitable Allocation Formula
            (Factors 1 and 3) ...................................................................................13

      B.     Terms of Proposed Attorneys' Fees......................................................14

IX.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS WARRANTED...............15

VII.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS WARRANTED...............15

      A.  The Proposed Class Meets the Requirements of Rule 23(b)(1) of the Federal
          Rules of Civil Procedure...................................................................15

      B.  Terms of Proposed Attorneys' Fees......................................................16

VIII.  CONCLUSION...................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ...............................................................14

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014).................................................................14

*In re BellSouth Corp. ERISA Litig.*,
2006 WL 431178 (N.D. Ga. Dec. 5, 2006).................................................................7

*Blanco v. Xtreme Drilling & Coil Servs., Inc.*,
No. 16-cv-00249, 2020 WL 4041456 (D. Colo. July 17, 2020) .................................14

*In re Broadwing, Inc. Erisa Litigation*,
252 F.R.D. 369 (S.D. Ohio 2006) ..............................................................................11

*In re Crocs, Inc. Secs. Litig.*,
306 F.R.D. 672 (D. Colo. 2014) .....................................................................6, 11, 13

*Cunningham v. Cornell Univ.*,
No. 16-cv-6525, 2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019),
aff'd, 86 F.4th 961 (2d Cir. 2023)................................................................................8

*In re Delphi Corp. Securities, Derivative*,
248 F.R.D. 483 (E.D. Mich. 2008) ........................................................................7, 14

*Diaz v. BTG Int'l Inc.*,
19-cv-1664, 2021 WL 2414580 (E.D. Pa. June 14, 2021)..................................8, 9, 14

*Feinberg v. T. Rowe Price Grp.*,
610 F. Supp. 3d 758 (D. Md. 2022) ...........................................................................10

*Flerlage v. US Foods, Inc.*,
No. 18-2614, 2020 WL 4673155 (D. Kan. Aug. 12, 2020) .........................................6

*Gaines v. BDO USA, LLP*,
No. 22-cv-1878 (N.D. Ill. May 18, 2024).....................................................................8

*In re Global Crossing Securities and ERISA Litigation*,
225 F.R.D. 225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................7

*Gottlieb v. Wiles*,
11 F.3d 1004 (10th Cir. 1993) ..................................................................................7

*Griffin v. Flagstar Bancorp, Inc.*,
2013 WL 6511860 E.D. Mich, Dec. 12, 2013)...........................................................14

*In re Integra Realty Resources, Inc. v. Fidelity Capital Appreciate Fund*,
263 F.3d 1089 (10th Cir. 2001) ..................................................................................6

*Karpik v. Huntington Bancshares Inc.*,
2021 WL 757123 (S.D. Ohio Feb. 18, 2021).....................................................7, 9, 14

*Kruger v. Novant Health, Inc.*,
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)............................................................14

*Law v. National Collegiate Athletic Ass'n*,
108 F.Supp.2d 1193 (D. Kan. 2000) ...........................................................................13

*Lowery v. City of Albuquerque*,
No. 09-cv-0457, 2013 WL 1010384 (D.N.M. Feb. 27, 2013) ........................................9

*In re Marsh ERISA Litigation*,
265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................................10

*Nunez v. B. Braun Med., Inc.*,
No. 20-4195, 2023 WL 5339620 (E.D. Pa. Aug. 18, 2023) ...........................................9

*O'Dowd v. Anthem, Inc.*,
No. 14-cv-02787, 2019 WL 4279123 (D. Colo. Sept. 9, 2019).....................................6

*Peterson v. Ins. Servs. Off., Inc.*,
No. 20-cv-13223 (D.N.J. May 22, 2024).......................................................................8

*Ramos v. Banner Health*,
No. 15-cv-2556, 2020 WL 6585849 (D. Colo. Nov. 10, 2020)....................................14

*Rothe v. Battelle Mem'l Inst.*,
No. 18-cv-03179, 2021 WL 2588873 (D. Colo. June 24, 2021) ..................................14

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) ..........................................................................*Passim*

*In re Sprint Corp. ERISA Litig.*,
443 F.Supp.2d 1249 (D. Kan. 2006)........................................................................7, 9

*Teodosio v. DaVita, Inc.*,
No. 22-cv-0712-WJM-MDB, 2023 WL 4761621 (D. Colo. July 26, 2023) .................................3

*In re Thornburg Mortg., Inc. Sec. Litig.*,
912 F. Supp. 2d 1178 (D.N.M. 2012) .......................................................................................10, 11

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
No. 8:15-cv-01614 (C.D. Cal. July 30, 2018).............................................................................8

*In re Wachovia Corp. ERISA Litig.*,
No. 09-cv-262, 2011 WL 13262040 (W.D.N.C. Oct. 24, 2011) ..................................................10

**STATUTES**

FED. R. CIV. P. 23(b)(1) ...............................................................................................................15

FED. R. CIV. P. 23(e)(2) ...............................................................................................................13

FED. R. CIV. P. 23(e)(2)(C)(ii).................................................................................................13, **14**

FED. R. CIV. P. 23(e)(2) C)(iii)....................................................................................................13

FED. R. CIV. P. 23(e)(2)(c)(iv)....................................................................................................13

FED. R. CIV. P. 23(e)(2) (D) ........................................................................................................13

**Other Sources**

The Employee Retirement Income Security Act of 1974 ......................................................*Passim*

## I.    INTRODUCTION

On July 11, 2024, this Court entered an Amended Order Granting Plaintiffs' Unopposed Motion For Preliminary Approval Of Class Action Settlement, Preliminary Certification Of Settlement Class, Approval Of Class Notice, Approval Of Plan Of Allocation, And Scheduling Fairness Hearing in this Action (ECF No. 96) ("Preliminary Approval Order"), which gave preliminary approval to the Parties' Settlement Agreement, which provides for the creation of a $2,000,000.00 Settlement Fund.[1] The Court's Preliminary Approval Order also, *inter alia*, conditionally certified a Settlement Class and appointed Plaintiffs as class representatives and Capozzi Adler, P.C ("Capozzi Adler") as Class Counsel. *Id*. Plaintiffs and Class Counsel believe each of these findings in the Preliminary Approval Order should be made final because the proposed Settlement represents an outstanding recovery. In particular, the Settlement represents approximately 26% to 38% of the Settlement Class's estimated maximum damages of $5.3 million to $7.7 million as calculated by Plaintiffs. Gyandoh Decl., ¶27. On the other hand, Defendants maintain that they did not violate ERISA in any way and that the Class suffered no losses. This Settlement was achieved only after extended negotiations between experienced counsel on both sides and with the help of Robert A. Meyer, Esq. of JAMS, a private mediator. Without doubt, Plaintiffs and Class Counsel believe the Settlement avoids the cost of protracted litigation, and the risk of no recovery at all.

---

[1] The Settlement Agreement, previously submitted to the Court, is being submitted herein as Exhibit 1 to the Declaration of Mark K. Gyandoh ("Gyandoh Decl.") which is filed contemporaneously with this memorandum. The Settlement Agreement has several exhibits. These exhibits are: A (Settlement Notice); B (Plan of Allocation); C (Preliminary Approval Order); D (Final Order); and E (CAFA Notice).  Undefined capitalized terms herein have the same meaning as in the Settlement Agreement.

There has been only one objector, out of the over 164,430 Class members who received mailed notice. Further, a reputable Independent Fiduciary has issued the approval of the terms of the settlement after conducting a diligent investigation into this Action and the Settlement terms. *See* Sept. 19, 2024, Gallagher Fiduciary Advisors, LLC ("Gallagher") Report (attached to the Gyandoh Decl. as Ex. 15). Lastly, while Defendants do not agree with all averments and statements made in this Memorandum, Defendants agree that final approval of the Settlement would be appropriate.

Plaintiffs respectfully request this Court enter the proposed Final Approval Order and Judgment approving the Settlement.

## II.    BACKGROUND

To avoid unnecessary repetition, Plaintiffs refer to, and incorporate, the discussion of the procedural history of this case from their memorandum in support of preliminary approval of the Settlement. *See* ECF No. 92, pp. 2-3. *See also* Gyandoh Decl., ¶¶3-29. As relevant to the instant motion, this Court's July 26, 2023 decision granting in part and denying in part Defendants' motion to dismiss the Complaint, *see* ECF No. 75, left Plaintiffs' recordkeeping fee claims and associated failure to monitor claims intact, but Plaintiffs' investment management fee claims were dismissed. *Id*. Following the motion to dismiss decision, the Parties engaged in discovery between October 31, 2022, and January 4, 2023, exchanging initial disclosures, interrogatories, request for production of documents, and their respective objections and responses. *See* Gyandoh Decl., ¶¶11-21. Discovery led to the production of approximately 7,699 pages of documents. *Id*., ¶21.

## III.    SETTLMENT NEGOTIATIONS

On October 27, 2023, the Parties engaged in a full-day mediation session with Robert Meyer, Esq. of JAMS, an experienced ERISA mediator.[2] *See* Gyandoh Decl., ¶¶22-23. The Parties evaluated numerous damages scenarios and were able to evaluate the strengths and weaknesses of their respective arguments. *Id*. Specifically, the Court's motion to dismiss decision upholding Plaintiffs' excessive recordkeeping fee claims, found it plausible that allegedly "the Plan was generally paying approximately $50 (and in one year $96) per participant for a service that was worth as little as between $14–$21." *Teodosio v. DaVita, Inc.*, No. 22-cv-0712-WJM-MDB, 2023 WL 4761621, at * 6 (D. Colo. July 26, 2023). Although through the discovery process, Plaintiffs determined that the Plan had a contracted recordkeeping rate with Voya that reflected a lower recordkeeping rate than initially pled, the essence of Plaintiffs' allegations that Defendants were overpaying for recordkeeping still remained. Plaintiffs calculated maximum potential damages to the Plan to be $5.3 to $7.7 million on the basis that, from Plaintiffs' perspective, the Plan could have obtained a $28 recordkeeping rate for 2016 and 2017, and $25 for 2018-2023 at the low end of damages. Gyandoh Decl., ¶27. And at the high end of damages, Plaintiffs calculated damages based on the Plan being able to achieve a $21 per participant annual recordkeeping rate throughout the Class Period.

The Parties arrived at the $2,000,000.00 settlement after a full day of mediating. Several weeks of negotiations followed to finalize the terms of the Settlement Agreement. *Id*.

## IV.    THE PROPOSED SETTLEMENT

The proposed Settlement provides DaVita (or its insurers) will pay $2,000,000.00 – the Gross Settlement Amount – to be allocated to participants on a *pro-rata* basis pursuant to the proposed Plan of Allocation (*see* Plan of Allocation, attached as Exhibit B to the Settlement

---

[2] *See* https://www.jamsadr.com/meyer/. Last accessed October 24, 2024.

Agreement, ECF No. 088-01) in exchange for releases and dismissal of this action. Gyandoh Decl.,

¶30; *see also* Settlement Agreement at §§ 1.39, 1.40, Article 7. Following the filing of the motion

for preliminary approval, in May 2024, the U.S. Department of Labor ("DOL") contacted the

Parties regarding the scope of the Settlement's release language under Section 1.39.2. The Parties

thereafter voluntarily agreed to revise the definition of Released Claims in Section 1.39.2 of the

Settlement Agreement as follows :

> [Claims] [t]hat arise out of, relate in any way to, are based on, or have any connection with (a) the overall structure, administration, management, or monitoring of the Plan's investment menu; (b) the selection, oversight, retention, removal, monitoring, compensation, fees, expenses, or performance of the Plan's investment options; (c) the selection, monitoring, oversight, retention, fees, expenses, or performance of the Plan's administrative and/or recordkeeping service providers; (d) disclosures or failures to disclose information regarding the Plan's investment options, fees, or administrative and/or recordkeeping service providers; (e) the monitoring and retention of Plan fiduciaries, including with respect to the Plan's investment options or administrative and/or recordkeeping service providers; (f) any alleged breach of the duty of loyalty, care, or prudence under ERISA relating to the Plan's investment options or administrative and/or recordkeeping service providers; and/or (g) prohibited transactions involving the Plan's administrative and/or recordkeeping services.

On June 6, 2024, the DOL informed the Parties that it had no objection to this revised release

language.  This language is incorporated into the proposed Final Approval Order and Judgment

submitted for the Court's approval.

## V.    THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED

Pursuant to the Preliminary Approval Order, Plaintiffs' Counsel has overseen the issuance

of the Court-approved Class Notice. Plaintiffs' Counsel retained Angeion Group, LLC

("Angeion") to serve as settlement and notice administrator. *See* Supplemental Declaration of

Settlement Administrator in Support of Plaintiffs' Motion for Final Approval signed by Kevin

Flynn ("Angeion Decl.") (attached as Gyandoh Decl., Ex. 2). Defendants provided Angeion with

data files containing the names and mailing addresses for a total of 164,439 unique Settlement

Class Members. Angeion Decl., ¶5. Angeion mailed the Settlement Notice via first class mail to

all 164,439 members. *Id.* As of October 22, 2024, Angeion has received 12,065 Settlement Notices returned as undeliverable. *Id.*, ¶6. Using forwarding addresses and a skip trace process, updated addresses were identified for 9,903 of the returned notices. *Id.*, ¶¶6-7. Out of 164,439 notices only 2,162 were ultimately undeliverable, representing a 98.69% rate of success. *Id.* The notice program apprised Settlement Class members of the terms of the Settlement, and of their right to object to any or all of the terms of the Settlement, Plan of Allocation, Case Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses.

Additionally, as of August 2, 2024, the Class Notice was posted on a dedicated website, www.Davitaerisasettlement.com, through which the public, and the Plan's current and former participants could view: (1) the Notice, (2) the Settlement Agreement, (3) the Order, (4) the Plan of Allocation, and (5) other relevant Court documents, and (6) contact information. *See* Angeion Decl., ¶8. On August 2, 2024, Angeion also established a case-specific toll-free number for Settlement Class members to call to obtain information regarding the Settlement. *Id.* As of October 22, 2024 the Settlement Website has received a total of 8,250 unique visitors. *Id.*, ¶9. As of October 22, 2024, Angeion has received a total of 1,037 phone calls to the toll-free number. *Id.*, ¶10.

The deadline for filing objections passed on October 21, 2024. *See* Preliminary Approval Order, ¶9. There has only been one objection raised. *See* ECF No. 99, Amanda R. Cravey Objection Letter.[3] As discussed *infra*, the objection lacks merit.

## VI.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED

### A.    Legal Standard

When "assessing whether a proposed settlement is fair, reasonable and adequate," the Tenth Circuit instructs district courts to consider the following four factors:

---

[3] On October 23, 2024, the Clerk filed Ms. Cravey's objection letter that she mailed directly to the Court. *See* ECF No. 100. Both ECF No. 99 and 100 appear to be the same letter.

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

There is an overriding public interest in settling litigation, particularly in class actions. *See In re Integra Realty Resources, Inc. v. Fidelity Capital Appreciate Fund*, 263 F.3d 1089, 1102 (10th Cir. 2001) (referring to "the policy of encouraging the voluntary settlement of lawsuits.").

### B.    The Settlement Satisfies the Tenth Circuit's *Rutter* Factors for Assessing Fairness, Reasonableness, and Adequacy

#### 1.    The Proposed Settlement Was Fairly and Honestly Negotiated

The proposed Settlement was fairly and honestly negotiated satisfying the first *Rutter* factor. "[W]here the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate and reasonable." *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787, 2019 WL 4279123, at *13 (D. Colo. Sept. 9, 2019) (citations omitted). Moreover, "engaging a mediator at least suggests fair and honest negotiations." *Flerlage v. US Foods, Inc.*, No. 18-2614, 2020 WL 4673155, at *5 (D. Kan. Aug. 12, 2020); *see also In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014).

The Parties settled this matter after a year and a half of litigation and a full-day mediation session with an experienced ERISA mediator. *See* Gyandoh Decl., ¶¶3-24. Throughout negotiations, the Plaintiffs consulted with experts regarding the extent of damages that the Plan sustained as a result of Defendants' alleged breaches of fiduciary duty. *See id.*, ¶¶11, 27. Thus, the proposed Settlement was fairly and honestly negotiated.

**2.     Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt**

The proposed Settlement is fair, reasonable, and adequate in light of the risks of further litigation and what Plaintiffs contend are serious questions of fact and law pertaining to liability, what a reasonable recordkeeping fee would be, and damages. These questions "place[] in doubt the value of the recovery plaintiffs might have been able to obtain." *Sprint*, 443 F.Supp.2d at 1261. Indeed, "risk is inherent in any litigation, particularly class actions. The risk is even more acute in the complex areas of ERISA law." *In re Delphi Corp. Securities, Derivative*, 248 F.R.D. 483, 496 (E.D. Mich. 2008); *see also In re BellSouth Corp. ERISA Litig.*, 2006 WL 431178, at *5 (N.D. Ga. Dec. 5, 2006) ("the rapid influx of new [ERISA] precedents presents an ever changing legal landscape, and there is a constant risk that the law will change before judgment."); *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("[T]he legal and factual complexities and uncertainties of the ERISA damages case also militate in favor of settlement."). If this complex ERISA Action were to continue, Plaintiffs would proffer their liability and damages experts, which would undoubtedly be countered by Defendants' proffered experts. *See Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *5 (S.D. Ohio Feb. 18, 2021) ("Even if Plaintiffs established a fiduciary breach, it is 'difficult' to measure damages in cases alleging imprudent or otherwise improper investments."). Thus, the second *Rutter* factor is satisfied.

**3.     The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation**

The settlement "value is to be weighed not against the net worth of the defendant, but against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993). In this case, the second and third *Rutter* factors overlap significantly,

because Plaintiffs believe the inherent complexity of legal and factual issues in ERISA cases increases the likelihood that, without a settlement, Plaintiffs would expend tremendous costs and time only to achieve lessor or no future relief. In *Diaz v. BTG Int'l Inc.*, an analogous case, the court granted final approval and aptly explained the unique complexity of these class actions:

> Plaintiffs allege breach of fiduciary duties under ERISA in the context of a complex investment arrangement between themselves and the Plan. Litigating this matter to verdict would have required a finder of fact to make credibility determinations on testimony offered by both fact and expert witnesses. If tried to final judgment, this action would have required expert testimony including expert testimony on damages that would have involved complex mathematical calculations and projections. Plaintiffs faced the risk of an adverse verdict if this action had been litigated to conclusion. Plaintiffs also faced the risk of a low damage award after substantial investment of both time and money.

*Diaz*, 19-cv-1664, 2021 WL 2414580, at *5 (E.D. Pa. June 14, 2021).

Here, the settlement amount representing 26% to 38% of what Plaintiffs calculate to be full value falls well within the range of settlements of similar ERISA cases. *See, e.g.*, *Peterson v. Ins. Servs. Off., Inc.*, No. 2:20-cv-13223, slip op. at 4 (D.N.J. May 22, 2024) (approving settlement that was approximately 10% of plaintiffs' claimed damages); *Gaines v. BDO USA, LLP*, No. 22-cv-1878, slip op. at 3 (N.D. Ill. May 18, 2024) (approving settlement that was less than 3% of plaintiffs' claimed damages); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614, slip op. at 10 (C.D. Cal. July 30, 2018) (approving settlement that was 17% of plaintiffs' maximum claimed damages). This should be compared to the probable costs of continued litigation with respect to both time and money which would be high. Fortunately, the Parties reached this proposed Settlement before incurring the costs of formal expert discovery, a risky summary judgment phase, and a trial. *See, e.g., Cunningham v. Cornell Univ.*, No. 16-cv-6525, 2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019), aff'd, 86 F.4th 961 (2d Cir. 2023) (same, upheld on appeal). Hence, this is an ideal stage to settle.

Indeed, the undersigned is particularly qualified to realistically evaluate the risks of continued litigation, as he tried an analogous case to an unfavorable verdict for plaintiffs in *Nunez v. B. Braun Med., Inc.*, No. 20-4195, 2023 WL 5339620 (E.D. Pa. Aug. 18, 2023). *See* Gyandoh Decl., ¶77. This factor weighs in favor of approval because the Settlement Agreement guarantees immediate relief for the Class and avoids the costs and serious risks of further proceedings shrinking, eliminating, or prolonging relief.

### 4.    The Parties Believe the Settlement is Fair and Reasonable

Both Plaintiffs' and Defendants' counsel are experienced in ERISA class actions of this type and approve of the Settlement. As discussed in greater detail in the Gyandoh Declaration, the approval and vast experience of Class Counsel in analogous actions weighs strongly in favor of the fairness of the proposed Settlement. *See* Gyandoh Decl., ¶¶67-77. As other courts have expressly found, the undersigned is "well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement." *Diaz*, 2021 WL 2414580, at *8. Likewise, Counsel for Defendants, Morgan, Lewis & Bockius LLP, are also one of the preeminent firms in the Country defending analogous ERISA class actions.[4] Courts within the Tenth Circuit have similarly found this factor met when counsel on both sides believe the settlement is fair and reasonable. *See Sprint*, 443 F.Supp.2d at 1261.

The Class Representatives who have dedicated time and energy to this matter also approve of the Settlement. This weighs in favor of approval. *See, e.g., Lowery v. City of Albuquerque*, No. 09-cv-0457, 2013 WL 1010384, at *39 (D.N.M. Feb. 27, 2013) (overruling the sole objector where "both parties and their counsel believe that the Second Proposed Settlement is fair" and "class members informed the Court that they are in favor of the Second Proposed Settlement."); *Karpik*,

---

[4] *See* https://www.morganlewis.com/services/erisaemployee-benefits-litigation

2021 WL 757123, at *6 ("the Class Representatives previously submitted declarations in support of the Settlement. [] Their support also favors approval.").

Finally, the reasonableness and the overall fairness of the Settlement has been evaluated and approved by a neutral third party – Gallagher, the Independent Fiduciary. The Gallagher Report supports final approval because "[t]he independent fiduciary offers an objective and highly sophisticated perspective concerning the fairness and adequacy of the proposed Settlement. Non opposition by the independent fiduciary is strong evidence in favor of the Settlement's adequacy." *In re Wachovia Corp. ERISA Litig.*, No. 09-cv-262, 2011 WL 13262040, at *4 (W.D.N.C. Oct. 24, 2011); *see also Feinberg v. T. Rowe Price Grp.*, 610 F. Supp. 3d 758, 769 (D. Md. 2022) (same); *In re Marsh ERISA Litigation*, 265 F.R.D. 128, 151 (S.D.N.Y. 2010) (same).

## VII.    THE LONE OBJECTOR'S ARGUMENTS LACK MERIT

As a threshold matter, Ms. Cravey is the sole objector, therefore representing less than 0.0006% of the Class. Accordingly, "[t]he small number of objectors, representing less than one-half of one-percent [] weighs in favor of the settlement." *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1244 (D.N.M. 2012) (citing *Rutter*, 314 F.3d at 1189). Ms. Cravey lays out five general criticisms and states that she "understand[s] the importance of settling this matter." ECF No. 99 at 2. Respectfully, none of Ms. Cravey's criticisms have merit, and each criticism lacks the requisite factual and legal support for her arguments. *See Thornburg*, 912 F. Supp. At 1239-40 (overruling objections where the objectors "do not offer a legal theory to support their claim" and "present no reason for Plaintiffs to bring claims for [their] alleged damages.").

First, Ms. Cravey believes that the "the $2,000,000 settlement fund is insufficient given the significant damages alleged in this case" and the size of the Plan. ECF No. 99 at 2. However, Ms. Cravey fails to acknowledge the tremendous risk involved in this litigation and fails to specify what an appropriate negotiated settlement amount would be and why. Importantly, "the Tenth

Circuit has explained, 'value' in terms of approving a Settlement is not a metaphysical term that assesses whether a Class will feel that all wrongs have been vindicated." *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d at 1243 (citing *Gottlieb*, 11 F.3d at 1014–15). For the reasons detailed *supra*, "the parties would be without the guarantee of receiving even a dollar if this suit were to be resolved at a later time." *Id*. Although Ms. Cravey believes Defendants should pay more, Defendants remained steadfast in their absolute denial of all liability. Thus, this Settlement amount is adequate as it "is the nature of a compromise." *Id*. at 1244.

Ms. Cravey's second and third issues address her disbelief that this proposed Settlement will bring "any substantial reform" by Defendants, and her "los[s] [of] confidence in DaVita as well as" other retirement plan fiduciaries. ECF No. 99 at 2.[5] As a threshold matter, DaVita denies all allegations of liability and that any reform is merited. In any event, Ms. Cravey does not specify what adequate "substantial reform" would entail. *See In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. at 685 ("[The objector] does not explain why the Settlement is unfair or indicate how a better result may have been achieved."). Moreover, as courts have recognized, the role of ERISA class actions serves an important public interest in deterring fiduciaries from breaching their duties. Courts have found that "[a]dequate[] compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law." *In re Broadwing, Inc. Erisa Litigation*, 252 F.R.D. 369, 381 (S.D. Ohio 2006). This is especially true in ERISA cases because "[p]rotecting retirement funds of workers is of genuine public interest." *Id*.

Ms. Cravey's fourth concern appears to be a misunderstanding as to how *pro rata* distribution formulas work. She is concerned that the allocation method is not transparent enough, and "those with smaller balances [] may receive very little compensation." ECF No. 99 at 3.

---

[5] Ms. Cravey has not been employed with DaVita since 2017. *See* ECF No. 99 at 3.

However, the *pro rata* method equitably allocates payment in proportion to each participant's injury as measured by their account size. Hence, this method is commonly approved of in ERISA cases. *See* Section VIII.A, *infra*. Ms. Cravey's final concern is with the amount of legal fees requested. *See* ECF No. 99 at 3. However, as detailed further in Plaintiffs' contemporaneously filed Motion and Memorandum For An Award of Attorney's Fees and Reimbursement of Expenses and Case Contribution Awards, ECF No. 102 ("Fee Motion"), Class Counsel are seeking fees in line with the market rate for class actions in this District and ERISA cases across the Country. The requested fee accounts for the dedication and expenses incurred until now, in tandem with the Class Counsel's significant risk of no compensation if Defendants were to succeed. Ms. Cravey does not specify how much she believes Class Counsel should be paid, nor does she address the amount of work and risk counsel has undertaken, but she does "acknowledge the necessity of compensating legal work." ECF No. 99 at 3.

Critically, Gallagher's independent fiduciary investigation into this Settlement satisfies many of Ms. Cravey's requested solutions by reviewing the value of the settlement, allocation method, scope of release, and request for attorney's fees. *See* Gallagher Report, at 1. Gallagher ultimately concluded that "[t]he settlement terms, including the scope of the release of claims; the amount of cash received by the plan; the proposed attorney's fee award; any non-monetary relief included in the Settlement, and any other sums to be paid from the recoveries, are reasonable in light of the plan's likelihood of full recovery, the value of claims foregone and the risks and costs of litigation." *Id.* at 2. In *Rutter,* the Tenth Circuit upheld the district court's overruling of objections, reasoning that "the fairness expert spent considerable time reviewing the details of the settlement and the allocation." *Rutter,* 314 F.3d at 1188. The same reasoning applies here. Plaintiffs understand, however, that the Gallagher Report was not publicly available before today's filing, and therefore Ms. Cravey has not had an opportunity to read the report.

Lastly, this Settlement was reached under the auspices of a neutral and experienced ERISA mediator who necessarily assessed the Parties' likelihood of success and validity of their damages scenarios. *See In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. at 685 ("the Court has no reason to believe that the mediators were unaware of the timing of the settlement and the implications thereof."). In light of the approval by both Parties, the Class Representatives, the mediator, and Gallagher, Ms. Cravey's objections respectfully should be rejected.

## VIII.   THE REQUIREMENTS OF FED. R. CIV. P. 23(e)(2) IS SATISFIED

When determining whether to grant final approval, the Court must also consider the following factors: (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (2) "the terms of any proposed award of attorney's fees, including timing of payment"; and (3) whether "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D).[6]

### A.    Equitable Treatment of Class Members and Equitable Allocation Formula (Factors 1 and 3)

The proposed Settlement does not favor any plaintiffs. Plaintiffs' shares of the Settlement will be allocated using a formula based on the losses to their Plan account. *See* Plan of Allocation, Section II. "Approval of a plan of allocation of a settlement fund in a class action is 'governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *Law v. National Collegiate Athletic Ass'n*, 108 F.Supp.2d 1193, 1195 (D. Kan. 2000). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id*. Here, the Plan of Allocation agreed to by the Parties clearly treats Class Members equitably relative to each other

---

[6] There are no agreements other than the Settlement Agreement, thus FED. R. CIV. P. 23(e)(2)(c)(iv) is irrelevant.

because each member is entitled to their *pro rata* share of losses. This method is commonly deemed equitable in ERISA cases. *See*, *e.g.*, *Karpik*, 2021 WL 757123 at *13; *In re Delphi Corp.*, 248 F.R.D. at 491–93. Also, while Plaintiffs also intend to request Case Contribution Awards, the Settlement is not contingent on Plaintiffs receiving an award in a specified amount and the amount Plaintiffs intend to request is in line with the awards in other cases as explained in the Fee Motion. For these reasons, the Plan of Allocation and Settlement should be approved.

### B.    Terms of Proposed Attorneys' Fees

The Settlement does not excessively compensate Class Counsel. The reasonableness of the requested attorney's fees is covered in detail in the Fee Memo. Importantly, the Settlement is not contingent on Class Counsel receiving a specific amount of fees and any fees they receive will be determined by the Court. The amount of fees Class Counsel is requesting, a third of the monetary portion of the Settlement, is reasonable under the Tenth Circuit's fee evaluation framework, and consistent with the awards in other ERISA cases. Thus, the requirement of Rule 23(e)(2)(C)(ii) will likely be met.[7]

## IX.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS WARRANTED

---

[7] *See Ramos v. Banner Health*, No. 15-cv-2556, 2020 WL 6585849, at *4-5 (D. Colo. Nov. 10, 2020) (awarding on third of the settlement fund in attorney's fees in an ERISA fiduciary breach class action); *Karpik*, 2019 WL 7482134, at *7 (same); *Diaz*, 2021 WL 2414580, at *8-9; *Griffin*, 2013 WL 6511860, at *8 (same); *Kruger*, 2016 WL 6769066, at *6 (same); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014); *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-00249, 2020 WL 4041456, at *5 (D. Colo. July 17, 2020) ("Courts in this district have recognized that the customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class.") (citations omitted); *Rothe v. Battelle Mem'l Inst.*, No. 18-cv-03179, 2021 WL 2588873, at *9 (D. Colo. June 24, 2021) (same).

The proposed class meets the requirements of Rule 23(b)(1) of the Federal Rules of Civil Procedure. Before entering the Preliminary Approval Order, this Court examined the record and conditionally certified the Settlement Class pursuant to FED. R. CIV. P. 23(b)(1). *See* Preliminary Approval Order. Nothing has changed in the record to compel the Court to now reach a different conclusion with respect to the final approval of the Settlement Class. To avoid unnecessary repetition, Plaintiffs incorporate their arguments from their memorandum in support of preliminary approval (ECF No. 87, at 7-14) and request the Court make the same findings it did in preliminarily certifying a settlement class and certify the following Class for settlement purposes only:

> All persons who participated in the Plan at any time from March 23, 2016, through July 1, 2024 ("Class Period"), including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are the members of the Plan Administrative Committee of DaVita, Inc. during the Class Period.

*See* Preliminary Approval Order, ¶1.

In connection with the instant motion for final approval, each of the Plaintiffs have submitted declarations and Class Counsel has also submitted a declaration to attest to their adequacy. *See* Declarations of Plaintiffs Teodosio, Brock, Gibbs-Racho, and Parks (attached as Exhibits 8, 9, 10 and 11, respectively, to the Gyandoh Declaration). Plaintiffs dedicated tens of hours to the prosecution of this action and have no interests antagonistic to the Class. *See id*.

## X.    CONCLUSION

For the reasons set forth above, Plaintiffs ask the Court to grant final approval of the Settlement and enter the proposed Final Approval Order and Judgment.

Dated: October 28, 2024                     Respectfully submitted,

                                            **CAPOZZI ADLER, P.C.**

                                            */s/ Mark K. Gyandoh*

15

Mark K. Gyandoh, Esquire
(admitted *pro hac vice*)
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax: (717) 233-4103
Email: markg@capozziadler.com


Counsel for Plaintiffs and
the Putative Class

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2024, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:  <u>/s/ *Mark K. Gyandoh*</u>
       Mark K. Gyandoh, Esq.