# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| LOURDES M. TEODOSIO, AMBER BROCK, GAROON J. GIBBS-RACHO AND DAMON A. PARKS, SR., individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> DAVITA, INC., THE BOARD OF DIRECTORS OF DAVITA, INC., THE PLAN ADMINISTRATIVE COMMITTEE OF DAVITA, INC. and JOHN DOES 1-30. <br><br> Defendants. | CIVIL ACTION NO.: 1:22-cv-00712 |

**DECLARATION OF MARK K. GYANDOH IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF PLAN ALLOCATION, AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND PLAINTIFFS' CASE CONTRIBUTION AWARDS**

I, Mark K. Gyandoh, Esquire, as Class Counsel, declare as follows:

1. I am a member in good standing of the bars of the Commonwealth of Pennsylvania and state of New Jersey, and have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2. I am a partner and chair of the Fiduciary Practice Group at Capozzi Adler, P.C., and have been the lead attorney for my firm in this litigation representing Plaintiffs and the proposed Settlement Class in the above-captioned action.

*Procedural History*

3. Following several months of investigation, including engaging consulting experts, Plaintiffs, Lourdes M. Teodosio, Amber Brock, Garoon J. Gibbs-Racho and Damon A. Parks, Sr.,

1

former participants in the DaVita Retirement Savings Plan (the "Plan"), filed a Class Action Complaint on March 23, 2022 (ECF No. 1) and a First Amended Complaint ("AC") on July 8, 2022 (ECF No. 20).

4. Defendants filed a Motion to Dismiss the Complaint (ECF 35) on August 26, 2022.

5. Plaintiffs filed their Brief in Opposition to Defendants' Motion to Dismiss on September 23, 2022 (ECF No. 41).

6. Defendants filed their Reply on October 14, 2022 (ECF No. 46).

7. On July 26, 2023, this Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (ECF No. 75).

8. On August 4, 2023, the Parties filed a Joint Motion to Stay Proceedings Pending Mediation. This Court granted the stay (ECF No. 79) on August 28, 2023.

9. Defendants filed their Answer and Defenses to the First Amended Complaint (ECF No. 80) on September 14, 2023.

10. The Parties filed a Joint Status Report (ECF No. 81) on October 30, 2023, which the Court subsequently granted (ECF 82).

***Discovery Practice***

11. Before initiating this action, Plaintiffs consulted with their in-house experts, reviewed publicly filed Plan documents, and the Plaintiffs' personal account information.

12. On December 10, 2020, prior to filing the suit, Plaintiffs requested numerous documents and information from the Plan administrator pursuant to Section 104(b)(4) of ERISA.

13. In response to Plaintiffs' request, on January 8, 2021, the Plan administrator produced numerous responsive documents.

14. On December 1, 2021, Plaintiffs served their Initial Disclosures.

15. On October 31, 2022, Defendants and Plaintiffs served their Initial Disclosures.

16. On January 1, 2023, Defendants and Plaintiffs served their First Set of Interrogatories and First Request for Production of Documents.

17. On February 3, 2023, Plaintiffs served their Responses to Defendants' First Set of Interrogatories and First Request for Production of Documents on Defendants.

18. On February 24, 2023, Defendants served their Responses to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents.

19. On April 19, 2023, Plaintiffs served their First Requests for Admissions Directed to Defendants.

20. On May 19, 2023, Defendants served their Responses and Objections to Plaintiffs' First Request for Admissions.

21. The Settling Parties conducted extensive discovery which led to the production of approximately 7,699 pages of documents by Defendants.

***Settlement Negotiations***

22. Settlement discussions began in the summer of 2023 when Plaintiffs sent Defendants a confidential settlement demand.

23. The Parties then agreed to attend a mediation with Robert Meyer, Esq. of JAMS, an experienced ERISA mediator. *See* curriculum vitae of Mr. Meyer at https://www.jamsadr.com/meyer/.

24. On October 27, 2023, the Parties engaged in a full-day mediation session with Mr. Meyer. The parties evaluated numerous damages scenarios and were able to evaluate the strengths and weaknesses of their respective arguments.

25. Specifically, the Court's motion to dismiss decision upholding Plaintiffs' excessive

recordkeeping fee claims, found it plausible that "the Plan was generally paying approximately $50 (and in one year $96) per participant for a service that was worth as little as between $14–$21." *Teodosio v. DaVita, Inc.*, No. 22-cv-0712-WJM-MDB, 2023 WL 4761621, at * 6 (D. Colo. July 26, 2023).

26. Although through the discovery process, Plaintiffs determined that the Plan had a contracted recordkeeping rate with Voya that reflected a lower recordkeeping rate than initially pled, the essence of Plaintiffs' allegations that Defendants were overpaying for Recordkeeping still remained.

27. Plaintiffs calculated maximum potential damages to the Plan to be $5.3 to $7.7 million on the basis that, from Plaintiffs' perspective, the Plan could have obtained a $28 recordkeeping rate for 2016 and 2017, and $25 for 2018-2023 at the low end of damages. And at the high end of damages, Plaintiffs calculated damages based on the Plan being able to achieve a $21 per participant annual recordkeeping rate throughout the Class Period.

28. The mediation session resulted in the Parties reaching a settlement in principle of $2,000,000.00. The Settlement Agreement is attached hereto as Exhibit 1. Based on the aforementioned negotiations and exchange of information, the Parties were able to negotiate a fair settlement that Plaintiffs believe to be in the Settlement Class's best interests.

29. Further, it is Plaintiffs' counsel's opinion that the proposed Settlement is fair and reasonable.

### The Settlement Terms

30. The Settlement provides Defendants will pay $2,000,000.00 – the Gross Settlement Amount – to be allocated to participants on a pro-rata basis pursuant to the proposed Plan of Allocation (*see* Exhibit B to Settlement Agreement) in exchange for releases and dismissal of this action (described in Article 7 of the Settlement Agreement).

31. The Gross Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Compensation if awarded by the Court.

32. The Class Members include all individuals in the Settlement Class, or:

> All persons, who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are the members of the Plan Administrative Committee of DaVita Inc. during the Class Period.

*See* Settlement Agreement, Section 1.47.

33. The Class Period is defined as March 23, 2016 through July 1, 2024 (the date of the Preliminary Approval Order).

34. A portion of the funds from the Net Settlement Amount will be allocated to each Class Member in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members. *See* Plan of Allocation at II.C. Former Participants who are entitled to a distribution of $2.50.00 or less will not receive a distribution from the Net Settlement Amount. *Id.* at II.D. For Class Members with an Active Account (an account with a positive balance) as of the date of calculation of the Final Entitlement Amount will have their proceeds allocated into their Plan account. *Id.* at II.E. Former Participants shall be paid directly by the Settlement Administrator by check. *Id*. at II.F.

35. Class Counsel intends to seek to recover their attorneys' fees not to exceed $666,600.00. *See* Settlement Agreement, Section 1.6. Class Counsel also intends to seek to recover litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, not to exceed $75,000.00. *Id.* As detailed below, the amount of expenses for which Class

5

Counsel will seek reimbursement is far less. Additionally, Class Counsel intends to seek Class Representatives' Case Contribution Awards in an amount not to exceed $10,000 each for the Class Representatives. *Id.* at Section 1.11.

36. Defendants also intend to retain an Independent Fiduciary to approve and authorize the settlement on behalf of the Plan. *See* Settlement Agreement, Article 2.1

*Settlement Notice*

37. The Court approved Class Counsel's selection of Angeion Group ("Angeion") as settlement and notice administrator and duly appointed Angeion as the Settlement Administrator. *See* Amended Preliminary Approval Order, ¶ 6.

38. Angeion has submitted a declaration testifying to their efforts regarding sending notice to the Settlement Class. *See* Declaration of Settlement Administrator in Support of Plaintiffs' Motion for Final Approval signed by Kevin Flynn ("Angeion Decl.") (attached as Gyandoh Decl., Ex. 2).

39. Using data provided by Defendants, Angeion mailed, by first-class mail, the Settlement Notice to 164,439 Class Members on August 2, 2024. Angeion Decl., at ¶5.

40. Angeion updated the Settlement Class member address information using either forwarding addresses provided by the U.S. Postal Service, or when none was provided, obtaining new addresses through conducting a "skip trace." *Id.* at ¶6. As of October 22, 2024, only 2,162 of the 164,439 notices (approximately 1.31%) were ultimately undeliverable. *Id.* at 7.

41. The notice program apprised Settlement Class members of the terms of the Settlement and of their right to object to any or all of the terms of the Settlement, Plan of Allocation, Case Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses.

6

42. As of August 2, 2024, the Class Notice was also posted on a dedicated website – www.davitaERISAsettlement.com– through which the public and the Plan's current and former participants could view copies of important case documents, including the Settlement Agreement with Exhibits, and the date and time of the Fairness Hearing. *Id.* at. ¶8.

43. As of August 2, 2024, Angeion established and continues to maintain the following toll-free number dedicated to this Settlement: 1-844-755-5502. *Id*.

### *Class Counsel's Requested Fee and Expense Awards is Fair and Reasonable*

44. As detailed in the accompanying Fee Memorandum, Class Counsel believes that Class Counsel's request for attorneys' fees readily satisfies the factors set forth in the Tenth Circuit.

45. This was a vigorously prosecuted case which involved considerable time and resources investigating the action, reviewing and analyzing documents produced through informal discovery, and negotiating an excellent result for the Settlement Class at mediation.

46. Class Counsel undertook this action aware of the possibility that they could be left uncompensated for their time and out-of-pocket expenses.

47. The recovery of $2,000,000.00 in this case was achieved through the skill, work, dedication, and effective advocacy of Class Counsel who leaned on their decades of experience with complex ERISA class action litigation of this type.

48. As payment for services rendered in achieving such a result, Class Counsel seeks an award of attorneys' fees in the amount of $666,600.00 plus reimbursement of expenses reasonably incurred by Class Counsel. Class Counsel's efforts since the inception of this case has been without compensation of any kind and their fee has been wholly contingent upon the result achieved.

49. In this action, attorneys' fees equaling thirty-three and one third (33 1/3%) percent of the Settlement Fund results in a fair and reasonable fee, especially given that the monetary result provides a benefit to the Settlement Class, and society has as interest that the wrongdoing alleged is prevented in the future.

50. As lead Plaintiffs' attorney, I personally managed, delegated, and supervised the allocation of personnel and expenses employed by my firm in this case. We have aggressively, efficiently, and vigorously prosecuted this case and represented the best interest of the Plaintiffs and the participants and beneficiaries of the Plan. Over the course of the litigation, we have incurred the following expenses:

| Expense Category | Total |
| --- | --- |
| FedEx | $148.30 |
| Mediation | $10,475.00 |
| Court Filing Costs | $1,088.00 |
| Travel Expenses | $2,102.34 |
| Westlaw and other Research | $1,098.71 |
| E-Discovery | $2,733.60 |
| **TOTAL** | **$17,645.95** |

51. The expenses listed above were actually incurred in the litigation of this case as reflected in the books and records of Capozzi Adler. These books and records are prepared from receipts, expense vouchers, check records, and other documents and are an accurate record of the expenses. These expenses were necessary to the prosecution and settlement of the case, and are of the type that would be billed to hourly clients of the firm.

52.     The firm's hours and lodestar devoted to this matter, as of October 28, 2024 are as follows:

| Name | Position | Hourly Rate | Hours | Total |
|---|---|---|---|---|
| Mark K. Gyandoh | Partner | $900.00 | 108.8 | $97,920.00 |
| Donald R. Reavey | Partner | $885.00 | 134.1 | $118,678.50 |
| Gabrielle P. Kelerchian | Mid-Level Associate | $550.00 | 10.9 | $5,995.00 |
| Brandon Williams | Mid-Level Associate | $550.00 | 11.8 | $6,490.00 |
| Linda Gussler | Paralegal | $350.00 | 89.45 | $31,307.50 |
| Lauren Phillips | Paralegal | $335.00 | 2.4 | $804.00 |
| Raashira Ragland | Legal Assistant | $250.00 | 1.0 | $250.00 |
| Thomas Sinclair | Mid-Level Associate | $550.00 | 9 | $4,950.00 |
| Giulia Conboy | Mid-Level Associate | $450.00 | 46.35 | $20,857.50 |
| James Wells | Partner | $700.00 | 11.4 | $7,980.00 |
| Jessica Murphy | Paralegal | $250.00 | 12.2 | $3,050.00 |
|  |  | **TOTAL** | 437.40 | **$298,282.50** |

53.     The above table is based on my firm's contemporaneous time records, and breaks out the hours and rates for each attorney, paralegal and professional staff.

54.     Details and material supporting the time records and expenses referenced in this declaration are available upon the request of the Court.

55.     I reviewed the time printouts to confirm both the accuracy of the entries on the printouts as well as the necessity for and reasonableness of the time commitment to the litigation.

9

Based on this review, I believe the time reflected in my firm's lodestar calculation is reasonable in amount and was necessary for the effective and efficient prosecution and resolution of the litigation. Capozzi Adler litigated this case on a wholly contingent basis and the hourly rates shown for the attorneys and paraprofessionals at my firm are the current hourly rates for contingent matters. These rates are in line with those charged by other firms in the field of nationwide ERISA class action work and have been approved by courts in numerous cases. Moreover, the rates are reasonable in comparison to the firms that defend nationwide ERISA class action cases.

56.     In total, Class Counsel has spent 437.40 hours on this case with a corresponding lodestar of $298,282.50; meaning Class Counsel's multiplier in this action is 2.2, well within the range approved in other matters as addressed in the Fee Memorandum. All unreimbursed expenses were $17,645.95.

57.     The time entries above do not include future time that will be spent on this case to communicate with class members and monitor Defendants' compliance with the Settlement, among other things. It also does not include time that will be spent in preparation for and attendance at the Fairness Hearing.

58.     Without the Action, it is highly unlikely that individual claimants would have had the resources to pursue claims of this magnitude. Protecting the retirement funds of employees, and obtaining recompense when those funds are mismanaged, is in the public interest and supports the fee award sought.

59.     As discussed in the accompanying Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlement Agreement and Fee memorandum, as a result of diligent efforts and their skill and expertise, Class Counsel was able to negotiate an excellent Settlement for the Settlement Class.

*Capozzi Adler's Hourly Rates Compare Favorably to Their Peers*

60. For its contingency practice, Capozzi Adler charges partner rates of $700 to $900 per hour; mid-level associate rates of $550 per hour; associate rates of $450 to $550; and paralegal and professional staff rates that range from $335 to $350 per hour. More junior support staff are billed at $250 per hour. These hourly rates are commensurate with the firm's degree of skill, experience, and reputation. Each member of Capozzi Adler's Fiduciary Practice Group has the requisite experience, as described below to command their hourly rates.

61. In the course of my 19-year nationwide ERISA practice, I have worked with most if not all firms that have a national ERISA class action practice. In my experience, while there are invariably differences in rates between different firms – and even between rates for lawyers within the same firm with the same number of years of practice – Capozzi Adler's rates are broadly in line with rates of other firms with nationwide class action practices, that have been the basis for awards of fees in courts around the country.

62. Four of these firms that I have worked for, or with, in the past recently filed declarations in support of a fee petition in *Beach, et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 1:17-cv-00563 (S.D.N.Y.). Like this Action, *Beach* involved allegations that JPMorgan Chase breached its fiduciary duties under ERISA to participants in the JPMorgan Chase retirement plan. *Id.* Plaintiffs' counsel's declarations demonstrate attorneys and staff in their offices charge similar rates as Capozzi Adler.

63. My former firm Kessler Topaz Meltzer & Check, LLP ("KTMC"), a Pennsylvania based firm like Capozzi Adler, charges partner rates that range from $700 to $920; associate rates that range from $400 to $505; paralegal rates that range from $250 to $275; and professional staff rates of $250. *See* Exhibit 3 (Excerpts of KTMC declaration).

64. Nichols Kaster, PLLP, a Minnesota-based firm with a national ERISA practice, charges partner rates that range from $775 to $875; associate rates that range from $425 to $575; paralegal and professional staff rates of $250. *See* Exhibit 4 (Excerpts of Nichols Kaster declaration).

65. Keller Rohrback L.L.P., a Washington State-based firm with a national ERISA practice, charges partner rates that range from $765 to $1,035; associate rates that range from $400 to $650; and professional staff rates that range from $225 to $325. *See* Exhibit 5 (Excerpts of Keller Rohrback declaration)

66. Robbins Geller Rudman & Dowd LLP, with an office in the state of New York and a national ERISA practice, charges partner rates that range from $760 to $1,325; associate rates that range from $460 to $575; paralegal rates that range from $275 to $350; and professional staff rates that range from $290 to $295. *See* Exhibit 6 (Excerpts of Robbins Geller declaration).

67. In *Troudt v. Oracle Corp.*, a case from this Circuit, the court also approved attorney fee requests in line with Capozzi Adler's request. *See Troudt*, No. 16 cv-00175, ECF No. 236 (Order Granting Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards) (D. Colo, July 10, 2020) (attached hereto as Exhibit 13).

68. Additionally, Capozzi Adler's rates generally compare favorably to the large, sophisticated firms that typically represent defendants in ERISA class actions.

69. The Valeo Report, a report that collected and summarized hourly rates across various firms, shows that among ERISA practice groups within the top 200 law firms in the defense bar, the 2017 hourly rate range for senior partners was $320-$1,363 (with an average of $835), for partners was $296-$1,202 (with an average of $751), and for senior associates was $238-$938 (with an average of $580). *See* Exhibit 7 (Excerpts of Valeo Report).

12

70. Finally, Capozzi Adler's rates have been implicitly approved by numerous courts while granting requests for fees. *See, e.g., Diaz v. BTG Int'l, Inc.*, No. 19-cv-1664-JMY, 2021 WL 2414580 (E.D. Pa. June 14, 2021); *Pinnell v. Teva Pharmaceuticals USA, Inc.*, No. 2:19-cv-05738-MAK, 2021 WL 5609864 (ECF No. 93) (E.D. Pa. June 11, 2021); *Gerken et al. v. Mantech Int'l.* No. 1:20-cv-01356-TSE (ECF No. 41) (E.D. Va. May 21, 2021); *Harding et al. v. Southcoast Hosp. Group et al.*, No. 1:20-cv-12216-LTS (ECF. No. 51) (D. Mass. April 25, 2022).

### *Counsel's Experience*

71. I received both my J.D. (2001) and LLM in trial advocacy (2011) from Temple University School of Law. While at Temple, I was the research editor for the Temple International and Comparative Law Journal. After law school I clerked for a year with the Hon. Dennis Braithwaite of the New Jersey State Appellate Court.

72. I have been litigating ERISA fiduciary breach lawsuits for 19 years, first at my prior firm of KTMC, and currently at Capozzi Adler where, as noted above, I am a partner and chair of the Fiduciary Practice Group for the last four plus years. Over my career I have been actively involved in many high-profile ERISA class actions. For example, I was one of the lead attorneys for plaintiffs in *Fifth Third Bancorp, et al., v. Dudenhoeffer, et al.*, 573 U.S. 409, 134 S. Ct. 2459 (2014), a seminal Supreme Court decision that clarified the unwavering duties owed by fiduciaries to pension plan participants. *See* biography at https://capozziadler.com/mark-k-gyandoh-esquire/.

73. Rounding out the ERISA team are other well-qualified attorneys (whose biographies may be found on our firm website) and our support staff which include paralegals and other paraprofessionals who assist in the practice. Additionally, as litigation dictates, the ERISA team avails itself of the services of the other attorneys and staff at the firm.

74. Additionally, Capozzi has been appointed class counsel in several analogous ERISA breach of fiduciary duty matters. *See, e.g., Sweet v. Advance Auto Stores Co., Inc*., No. 21-cv-549, 2023 WL 3959779 (W.D. Va. June 9, 2023); *Huang, v. TriNet HR III, Inc*., No. 20-cv-2293, 2022 WL 13631836 (M.D. FL. Oct. 21, 2022); *Stengl v. L3Harris Techs., Inc*., No. 22-cv-572, 2023 WL 11932263 (M.D. Fla. June 5, 2023); *Lucas, v. MGM Resorts International*, 20-cv-01750 (D. Nev. Oct. 20, 2022) (ECF 112); *Nunez, v. B. Braun Medical, Inc*., No. 20-cv-04195 (E.D. Pa. June 30, 2022) (ECF. 69); *Boley v. Universal Health Servs., Inc*., 337 F.R.D. 626 (E.D. Pa. 2021); *McCool v. AHS Mgmt. Co., Inc.,* No. 19-cv-01158, 2023 WL 2729161 (M.D. Tenn. Mar. 30, 2023) (appointing Capozzi Adler as Class Counsel).

75. Additionally, Capozzi has been appointed interim lead or co-lead class counsel in several analogous ERISA breach of fiduciary duty matters. *See*, *e.g.*, *Tracy v. The American National Red Cross*, No. 21-cv-00541 (D.D.C. Apr. 16, 2021) (appointing Capozzi Adler interim Co-Lead Class Counsel); *Bilello, v. Estee Lauder, Inc.*, No. 20-cv-04770 (S.D.N.Y. Aug. 10, 2020) (Doc. 11.) (appointing Capozzi Adler interim lead class counsel); *Covington v. Biogen Inc.*, No. 20-cv-11325 (D. Mass. Oct. 6, 2020) (Doc. 24) (appointing Capozzi Adler interim Co-Lead Class Counsel); *Johnson v. Quest Diagnostics.*, No. 20-cv-07936 (D.N.J. Oct. 2, 2020) (Doc. 7) (same).

76. In the course of prosecuting ERISA class actions such as this, I have supervised the preparation of numerous consolidated pleadings, responses to motions to dismiss, drafting of discovery requests and review of hundreds of thousands of pages of plan-related documents and related documentation, and litigated cases through the summary judgment and trial phases.

77. The firm strives to obtain the best results for class members in every circumstance. We have successfully defeated motions to dismiss similar allegations in numerous actions. *See, e.g., Brown v. MITRE Corp.,* No. 22-cv-10976, 2023 WL 2383772 (D. Mass. Mar. 6, 2023);

14

*Seibert v. Nokia of Am. Corp.,* No. 21-cv-20478, 2024 WL 2316551 (D.N.J. May 22, 2024); *Kendall et al v. Pharmaceutical Product Development, LLC*, No. 7:20-cv-00071, 2021 WL 1231415 (E.D.N.C. March 31, 2021) (upholding allegations that plan fiduciaries selected higher-priced identical share classes and overpaid for recordkeeping); *Stengl v. L3Harris Techs., Inc.*, No. 22-cv-572, 2023 WL 2633333 (M.D. Fla. Mar. 24, 2023); *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293 (D. Minn. 2021); *Davis v. Magna Int'l of America, Inc.*, No. 20-cv-11060, 2021 WL 1212579 (E.D. Mich. March 31, 2021) (same); *Jones v. Coca-Cola Consolidated, Inc.*, No. 20-cv-00654, 2021 WL 1226551 (W.D.N.C. March 31, 2021) (same); *McCool v. AHS Management Company, Inc.*, No. 19-cv-01158, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Garnick v. Wake Forest Univ. Baptist Med. Ctr.,* 629 F. Supp. 3d 352 (M.D.N.C. 2022); *In re Medstar ERISA Litig.*, No. 20-cv-1984, 2021 WL 391701 (D. Md. Feb. 4, 2021) (same); *Silva v. Evonik Corp.*, 2020 WL 12574912 (D.N.J. Dec. 30, 2020) (same); *Moore v. Humana, Inc.*, No. 21-cv-232, 2022 WL 20766504, at *3 (W.D. Ky. Dec. 2, 2022); *Pinnell, v. Teva Pharmaceuticals USA, Inc.*, No. 19-cv-5738, 2020 WL 1531870 (E.D.Pa. Mar. 31, 2020); *Peterson v. Insurance Services Office, Inc*., No. 20-cv-13223, 2021 WL 1382168 (D.N.J. Apr. 13, 2021); *Rosenkrantz, et al., v. Altru Health System,* et al., 20-cv-168, 2021 WL 5868960 (Dec. 10, 2021).

78. We have also been successful at the appellate level resulting in the reversal and remand of wrongly dismissed actions. *See, e.g., Perkins v. United Surgical Partners Int'l, Inc.,* No. 23-cv-10375, 2024 WL 1574342 (5th Cir. Apr. 11, 2024) (reversing district court dismissal of ERISA excessive fee action); *Kruchten v. Ricoh USA, Inc.*, No. 23-cv-1928, 2024 WL 3518308 (3d Cir. July 24, 2024) (same); *Kong et al. v. Trader Joe's Co.,* No. 20-56415, 2022 WL 1125667 (9th Cir. Apr. 15, 2022) (same); *Davis et al. v. Salesforce.com. Inc. et al.*, No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) (same). And we have been successful in obtaining affirmances of

15

rightly decided decisions. *See, e.g., Hawkins et al. v. Cintas Corp.*, 32 F. 4th 625 (6th Cir. 2022) (affirming denial of motion to compel arbitration in ERISA case); *Boley v. Universal Health Services, Inc.*, 36 F.4th 124 (3d Cir. 2022) (upholding decision certifying Rule 23(b)(1) class in ERISA action).

79. My firm has also engaged in successful settlement negotiations and mediations in ERISA actions, recovering over $100 million dollars to date for its clients and class members. *See, e.g., McNeilly v. Spectrum Health System*, Civil Action No. 20-cv- 00870 (W.D. Mich. 2023) (recovered $6,000,000.00 class settlement); *Buescher v. Brenntag North America, Inc.,* No. 20-cv-00147 (E.D. Pa. 2020) (recovered $2,300,000.00 class settlement); *Pinnell, v. Teva Pharmaceuticals USA, Inc.,* No. 19-cv-05738 (E.D. Pa. 2019) (settlement in the amount of $2,550,000.00 after successful mediation); *Freck v. Cerner Corp., et al.*, No. 20-cv-00043 (W.D. Mo. 2020) (recovered $4,050,000.00 class settlement); *Gerken v. ManTech Int'l Corp,* No. 20-cv-01536 (E.D. Va. 2020) (recovered $1,200,000.00 class settlement).

80. Capozzi Adler also has the resources and commitment to deploy those resources on behalf of the proposed class. With three office locations, the firm has been successfully serving clients for over 25 years offering a full range of legal services.

81. Given my years of experience in this field of law, including, trying an analogous case to an unfavorable verdict for plaintiffs in *Nunez v. B. Braun Med., Inc.*, 2023 WL 5339620 (E.D. Pa. Aug. 18, 2023), I believe the settlement achieved in this case is adequate and certainly reasonable and fair.

### *Case Contribution Awards Sought for the Plaintiffs Are Reasonable*

82. Plaintiffs seek an award of $10,000 for each of the Class Representatives for their contributions to the prosecution and Settlement of the Action. Any such awards will be paid from the Settlement Fund.

83. Each of the Plaintiffs was instrumental in seeking relief on behalf of the Plan and they each have been actively involved in the litigation. These individuals took time away from other obligations in order to fulfill their obligations to the Settlement Class by: (1) engaging counsel, reviewing the Complaint and agreeing to publicly serve as Plaintiffs; (2) staying informed of the case and making themselves available at all times to discuss the litigation; (3) providing information and documents; (4) participating in teleconferences concerning the Action; and (5) and reviewing, considering, and ultimately approving the proposed Settlement for presentation to the Court.

84. Attached hereto as Exhibit 8 is Plaintiff Lourdes M. Teodosio's declaration in support of her application for a case contribution award. Plaintiff Amber Brock's declaration is attached as Exhibit 9. Plaintiff Garoon J. Gibbs-Racho's declaration is attached as Exhibit 10 and Plaintiff DaMon A. Parks, Sr.'s declaration is attached as Exhibit 11.

85. As discussed in the accompanying Fee Memorandum, the requested case contribution awards are supported by ample legal authority in similar cases.

86. Further, to date, no objection to the Case Contribution Awards request has been raised.

***Authority Supporting Appropriateness of Class Certification***

87. The Settlement Class encompasses thousands of Plan participants. Class Notice was sent to over 100,000 individuals.

88. Having litigated almost exclusively ERISA breach of fiduciary duty actions over my career it is my experience that the types of claims asserted in this action are typically certified.

89. Attached hereto as Exhibit 12 is a non-exhaustive list of more than eighty-nine decisions from around the country in which courts certified classes in ERISA breach of fiduciary duty actions, like the instant action, including several decisions certifying classes in "excessive fee" suits.

I declare, pursuant to 28 U.S.C. §1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 28th day of October, 2024, in Merion Station, Pennsylvania.

Respectfully submitted,

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax (717) 233-4103
Email: markg@capozziadler.com

*Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

I further certify that on October 28, 2024, true and correct copies of the foregoing Final Fee Memorandum, Final Approval Memorandum, and Gyandoh Declaration have been sent to Objector Amanda R. Cravey in accordance with this Court's Amended Preliminary Approval Order, ECF No. 96, at ¶10.

/s/ *Mark K. Gyandoh*
Mark K. Gyandoh